No. 13133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DANNY NELSON and ELMER CRATON NELSON,

Defendant and Appellant.

---

Appeal from: District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Bradley Parrish argued, Lewistown, Montana

For Respondent:

Hon. Michael Greely, Attorney General, Helena,
Montana
Allen B. Chronister, Assistant Attorney General,
argued, Helena, Montana
William Spoja, County Attorney, Lewistown, Montana
Robert L. Knopp, Deputy County Attorney, argued,
Lewistown, Montana

---

Submitted: January 21, 1977

Decided: FEB 24 1977

Filed: FEB 24 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants were convicted by jury verdict in the district court, Fergus County, of two counts of offering to sell dangerous drugs in violation of section 54-132, R.C.M. 1947. Both defendants appeal.

The material facts are disputed. The state's version is that defendants Danny Nelson and Elmer Nelson, brothers, offered to sell marijuana on two separate occasions to James Bridgeford, an undercover narcotics agent for the Fergus County sheriff's department.

The first transaction was on the night of October 27, 1974, at the Husky truck stop on the Lewistown by-pass. Defendants drove up to the truck stop in their car, bought a couple of dollars worth of gas from Bridgeford who was working there, and asked him if he wanted to buy a "lid". Defendants left, returned later, "arrangements" were made, and defendants waited in Bridgeford's car while he was servicing their car. Thereafter Bridgeford went over to his car where defendants were waiting and they handed him "a lid of grass" in a plastic baggy and he paid them $20. About five minutes after defendants left, Bridgeford called Randall Cordle, a narcotics agent and deputy sheriff of Fergus County, who came to the truck stop where Bridgeford turned the plastic baggy over to him.

The second transaction, according to the state, occurred on the night of October 30, 1974. Bridgeford went to a private residence on Pine Street in Lewistown where defendants were living. After talking about marijuana, an arrangement was made for Bridgeford to buy another "lid" from them. Defendant Elmer Nelson went over to

a plastic pumpkin on a shelf in another room, extracted a "lid",
and gave it to defendant Danny Nelson as they were going to the
car for a drive up Spring Creek. While driving around defendants and
Bridgeford passed around a "joint" that defendant Elmer Nelson had,
which Bridgeford simulated smoking. During the drive, defendant
Danny Nelson put the "baggy" on the seat toward Bridgeford and
Bridgeford handed him $20. Thereafter Bridgeford contacted Deputy
Randall Cordle and turned the baggy over to him.

Defendants' version differs in all material particulars.
According to defendants, the alleged events forming the basis of
both charges are complete fabrications. They admit going to the
truck stop on the night of October 27, 1974 accompanied by five
other persons and getting some gas, but deny returning there later.
They categorically deny having any marijuana, selling or offering
to sell any marijuana to Bridgeford, or receiving any money from
him.

Concerning events of October 30, 1974, defendants admit
going for a drive up Spring Creek with Bridgeford in his car
accompanied by two others and smoking a "joint" of marijuana which
they claim Bridgeford himself had. Defendants deny they themselves
had any marijuana or sold or offered to sell any to Bridgeford.
They deny the incident involving the plastic pumpkin in the house
on Pine Street.

The only witness in the state's case-in-chief was Bridgeford.
The only exhibit offered by the state was a plastic bag of a green
substance marked "Evidence description, one baggy of green substance
believed to be marijuana bought from Danny and Elmer Nelson, 10-27-
74." After denying its admission in evidence for lack of foundation,
the district court admitted it for demonstrative purposes as shown
by the following colloquy:

"Q. Mr. Bridgeford, did you - you obtained the substance from Danny Nelson, correct? A. Yes.

"Q. And did you subsequently transfer that to Mr. Cordle? A. Yes, I did.

"Q. And this appears to be basically the same item, is that correct? A. Yes, it does.

"MR. KNOPP: Your Honor, the State would request that the exhibit be entered for purposes of demonstration. In the particular charge, it is not necessary to prove that anything of that nature was conveyed, only that there was an offer to convey this particular item.

"THE COURT: Inasmuch as it is similar and so on, it could be admitted for that purpose.

"MR. PARRISH: I will object, your Honor, because the witness is not sure that is the same one. He said it could be.

"THE COURT: He's not entering it as the same one. He's entering it as demonstrative. It was something like this, and that's the basis on which I admit this."

The two defendants were the only witnesses in their case-in-chief. In rebuttal, the state called two witnesses, Jack Songer, the sheriff of Fergus County, and William A. Spoja, Jr., the Fergus County attorney.

Sheriff Songer read a written report to the sheriff's office made by deputy Randall Cordle. This report reads:

"A. This is dated October 27th, 1974, and the offense is sale of dangerous drugs. On the above date, I, Randy Cordle, received a phone call from a confidential informant stating that approximately at 2:15 A.M., confidential informant had purchased a quantity of marijuana from Danny and Elmer Nelson. I went to talk with confidential informant and he told me the following: Confidential informant stated that Nelsons and Steven Gavin came to his place of employment to get some gasoline. While confidential informant was filling the Nelson vehicle, Elmer said to confidential informant, do you want a lid. Confidential informant said yeah, possibly, how much is it going to cost me. Danny said $20.00 because we had to go out of town to get it, and we could only get six lids. Confidential informant said when can I get it. Danny said we don't have it now, but we can get it tonight. Confidential

informant then stated to me that the suspects left for approximately fifteen to twenty minutes and then returned. After returning, Danny told confidential informant we are going to look in your car, come over when you are done filling that car. After confidential informant finished, he did in fact walk over to his vehicle at which time Danny, now seated in the car, gave confidential informant a lid, and confidential informant in turn gave Danny $20.00 which Danny had earlier stated that was the amount he wanted for the lid. After concluding with confidential informant, I brought the said marijuana to the Fergus County Sheriff's Office, and locked it in the vault. Signed R. Cordle, Deputy Sheriff, Fergus County."

The sheriff testified it was a report given to him as a routine matter in the normal course of sheriff's office procedures. Sheriff Songer identified the "confidential informant" referred to therein as Jim Bridgeford.

The sheriff also summarized the contents of a second written report submitted to him by deputy Randall Cordle in the routine procedures of his office in the normal course of business covering the events of October 30, 1974. This report was unsigned. The sheriff's testimonial summary indicated that at 1:40 a.m. the confidential informant bought marijuana from Danny Nelson in their car in the vicinity of the truck route in Lewistown. The report also indicated that while in defendant Elmer Nelson's house he took out a plastic pumpkin from a shelf and reached in and removed a handful of packaged lids containing marijuana and handed them to defendant Danny Nelson. Sheriff Songer also testified that Jim Bridgeford's workmanship with the sheriff's office had been "reliable, confidential, to where he was trusted by this office to use as a confidential informant" and Bridgeford had been deputized and issued a gun permit.

The sheriff's testimony concerning the contents of the two written reports was objected to by defendants' counsel on the grounds it was hearsay, incorrect rebuttal, and lacked proper foundation. The objections were overruled.

County attorney Spoja testified without objection that "the feeling and information that I had indicated to me Mr. Bridgeford was completely reliable. I have no reason whatsoever to doubt him." The county attorney also testified that he was aware "that Mr. Bridgeford was directly involved with the Nelsons and in fact that there were funds provided for that specific purpose."

On January 17, 1975, defendants Danny and Elmer Nelson were charged by Information in the district court, Fergus County, with two counts of selling dangerous drugs to Bridgeford on October 27 and 30, 1974, respectively. On May 23, 1975, the deputy county attorney moved for leave to file an amended Information charging the defendants with "offering to sell" dangerous drugs on the same dates. Leave was granted and the amended Information was filed on the same date. Following pleas of not guilty to each charge by each defendant, a jury trial was held on May 29, 1975. The jury verdict found both defendants guilty as charged. Judgment was entered. Defendants appeal from the judgment of conviction.

Defendants raise three issues on appeal which we summarize in this manner:

1) Did the district court commit reversible error in admitting the sheriff's testimony concerning the contents of the written reports of deputy Cordle?

2) Did the district court commit reversible error in permitting improper rebuttal testimony by the sheriff?

3) Must the state prove beyond a reasonable doubt that the substance offered for sale was in fact a dangerous drug?

We need go no further than the first issue to determine that the judgment must be vacated and a new trial granted. However, before we discuss the first issue, we wish to make it clear there

were other errors, e.g., admission of the "baggie" in evidence, and failure to have the contents of the baggie analyzed by the state criminal identification laboratory so that identification could be established at the trial. These errors must not be repeated on retrial.

The first issue is whether the sheriff's testimony concerning the contents of the written reports of Deputy Cordle is reversible error.

The state contends the testimony was admissible as an exception to the hearsay rule under section 93-901-1, R.C.M. 1947. Alternatively, the state argues the authenticity of the reports was established and they are admissible under the reasoning of State v. Cooper, 161 Mont. 85, 504 P.2d 978. In any event, the state contends, the error is harmless because no prejudice was shown.

Defendants argue the testimony was inadmissible hearsay and prejudice clearly resulted.

The contents of the report are clearly hearsay. They are unsworn statements made out of court with no opportunity afforded to confront the writer and question him as to their veracity. In fact, certain statements therein are hearsay twice removed. Thus unless the contents of the statement fall within one of the exceptions to the hearsay rule, they are inadmissible in evidence.

The state contends the contents of the report are admissible under a statutory exception to the hearsay rule, section 93-901-1, R.C.M. 1947. That statute provides:

> "Written reports or findings of fact made by officers of this state, on a matter within the scope of their duty as defined by statute, shall, in so far as relevant, be admitted as evidence of the matter stated therein."

Heretofore this Court held that the written report of the state chemist in the state criminal investigation laboratory concerning the physical and chemical testing and identification of a substance as marijuana was admissible under this statute. State v. Snider, _____Mont._____, 541 P.2d 1204, 32 St.Rep. 1050 (1975).

We have also previously denied admission in evidence of an edited, undated and signed accident report of a United States Forest Service engineer in a personal injury action by a skier against a ski resort. In that case the injuries occurred when a ski lift cable derailed and threw the skier to the ground. The witness through whom the report was sought to be admitted was not the author of the report but was present at the time the inspection was made, (the subject of the report). We held the report was inadmissible hearsay under section 93-901-1, R.C.M. 1947. Pessl v. Bridger Bowl, 164 Mont. 389, 524 P.2d 1101. Also see: Richardson v. Farmers Union Oil Co., 131 Mont. 535, 312 P.2d 134, where we held an Air Force officer's report inadmissible.

The federal rule seems to differ and allows police reports containing hearsay under 28 U.S.C.A. §1732. The rationale seems to be that the federal statute is designed to abrogate the common law hearsay rule. See: Bridger v. Union Railway Company, 355 F.2d 382, as illustrative of the federal approach.

In our view under Montana's statute, the contents of the two reports by deputy Cordle are inadmissible hearsay, notwithstanding the fact the reports were official reports given the sheriff as a routine matter in accordance with office procedures. It is also inadmissible under the rationale of Cooper. The reason for our holding is that deputy Cordle himself, had he been called as a witness at the trial, could not have testified to the contents of

the report. The report is largely statements of defendants to a confidential informer who relayed the statements on to a deputy sheriff. This is patently hearsay and inadmissible through the lips of either the sheriff or deputy Cordle. The confidential informant to whom the statements were made testified to their contents, but the official character of the report does not permit the sheriff or deputy Cordle to report the statements on the witness stand to bolster the credibility of the confidential informant.

The purpose of Montana's statute is not to render otherwise inadmissible hearsay admissible simply because it is contained in a police report.

For the foregoing reasons, we hold the contents of deputy Cordle's report was improperly admitted in evidence, was prejudicial to defendants, and the convictions cannot stand.

The judgment of the district court is vacated and the cause remanded to the district court, Fergus County, for a new trial.

_____
Justice


We Concur:

_____
Chief Justice

_____

_____

_____
Justices.