No. 13733

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN STOCKTON DAVISON,

Defendant and Appellant.

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

James A. Tulley argued, Big Timber, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Allen B. Chronister, Assistant Attorney General,
 argued, Helena, Montana
Kenneth Olson, County Attorney, Big Timber, Montana

Submitted: May 27, 1977

Decided:

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals from an order of the district court, Sweet Grass County, denying his motion for a new trial on the grounds of jury misconduct during deliberations.

On October 21, 1976, defendant was charged with theft in violation of section 94-5-302(1)(a), R.C.M. 1947, and was tried on November 29, 1976, in the Sweet Grass County courtroom in Big Timber. Because of bad weather and a cold jury room, the trial judge suggested, at the conclusion of the case, that he would clear the courtroom and permit the jury to deliberate there rather than in the colder jury room. Both counsel agreed to this arrangement.

The jury found defendant guilty and sentencing was set for December 2, 1976.

On the day after the jury verdict, defense counsel was discussing the case with one of the jurors when the juror mentioned the jury did not understand some material contained in the police report. Counsel recalled that neither party had introduced a police report in evidence and immediately went to the clerk of court's office and asked to see the exhibits used at trial. The clerk of court produced the exhibits including:

(1) a police report prepared by the undersheriff and marked state's exhibit 7, but not introduced in evidence, and

(2) a police teletype originating from the Big Timber sheriff's office dated October 11, 1976, marked as state's exhibit 8, but not introduced in evidence.

On the sentencing date defense counsel moved for a new trial on grounds the jury had viewed the police report and police teletype. All parties acknowledged the nonadmitted exhibits had been inadvertently left in the courtroom when the jury started its deliberations in the courtroom. Defense counsel offered to

obtain juror affidavits stating the documents were circulated by the jury during its deliberations, and the county attorney admitted that they had been circulated. The trial court then postponed sentencing to consider the matter.

The county attorney later filed a motion allowing him to take juror affidavits to establish that the exhibits involved did not prejudice defendant. Defense counsel objected to this motion, and again renewed his motion for a new trial. The trial court granted the county attorney's motion to obtain juror affidavits. The county attorney then filed four affidavits which in substance declared the jurors had looked at the nonadmitted exhibits but that they did not affect their deliberations.

At the sentencing hearing the court received the affidavits in evidence over defendant's objection, overruled defendant's motion for a new trial, and sentenced defendant to ten years in the state penitentiary.

On appeal, defendant urges his motion for a new trial should have been granted because of jury misconduct. He claims (1) that the exhibits in question were prejudicial to the defendant, and (2) that the offered affidavits could not be received to demonstrate the lack of prejudicial effect of the jury's misconduct.

We hold the district court should have granted defendant's motion for a new trial. The existence of the unauthorized exhibits in the jury room during deliberations, when considered with their tendency to give credibility to the testimony of the prosecution witnesses, clearly demonstrated their prejudicial nature. While the jurors' affidavits were admissible to show the existence of juror misconduct, they were not admissible to show the jurors were not actually influenced by the unauthorized evidence.

Section 95-1913(c), R.C.M. 1947, provides that evidence which may be taken into the jury room for deliberation may include " * * * all papers which have been received as evidence in the cause * * *".  Where a jury has improperly (though innocently) taken nonadmitted papers or documents and other articles into the jury room, it is generally held the mere act of doing so does not entitle a defendant to a new trial.  Rather, he must establish he has been prejudiced.  Putro v. Baker & Mannix Electric, 147 Mont. 139, 147, 410 P.2d 717; United States v. Downen, 496 F.2d 314, cert.den. 419 U.S. 897, 95 S.Ct. 177, 42 L ed 2d 142.  If one can demonstrate material prejudice it is axiomatic, of course, that one who would be so affected would be entitled to a new trial.  Otherwise the defendant would be deprived of an impartial jury, the right to confront witnesses, and the assistance of counsel at every critical stage of the trial.  This kind of situation is prima facie incompatible with the Sixth Amendment to the United States Constitution, Government of the Virgin Islands v. Gereau, 523 F.2d 140, and of course, incompatible with Article II, Section 24 and the due process guarantee of Article II, Section 17 of the 1972 Montana Constitution.

Since both sides agree that the jury improperly considered evidence which was not part of the trial record, the question to consider is whether it was prejudicial.  We confine our discussion to the police report because we conclude the jury's use of the police report constituted prejudice that was not overcome by the prosecution.  The State contends that Officer Brannin could have testified to the information contained in the police report anyway and therefore that State v. Nelson, ____Mont.____, 560 P.2d 897, 34 St.Rep. 80 (1977) (inadmissible hearsay upon hearsay in a police report) does not apply.  The State however, did not call Officer Brannin, and the defendant was deprived of an opportunity

- 4 -

to cross-examine him. Nevertheless, through the police report, the jury had evidence that helped support the credibility and statements of the prosecution witnesses who testified to the facts contained in the report. Under these circumstances the trial court could not presume the police report was not prejudicial. The jury deliberations had been tainted by their reading of the nonadmitted police report.

Admittedly, the only alternative left to the county attorney was to obtain jury affidavits to the effect that their deliberations were not influenced by the nonadmitted police report. Surely the affidavits were proper to show that the nonadmitted evidence was considered by the jury, but they were not proper to show whether they in fact influenced the jury. This Court stated in Putro:

> " * * *'This court * * * has never held, and does
> not now hold, that, if the contact of the juror
> with outside, prejudicial influences be clearly
> demonstrated and uncontroverted, the juror may
> purge himself by testifying that such influences
> did not affect his judgment in forming his ver-
> dict.' * * *
>
> " * * *'There is no practicable method to so analyze
> the mental operation of the jurors as to determine
> whether, in point of fact, the verdict would have
> been the same if the trial had been conducted, as
> both parties had a right to expect, according to
> law and upon the evidence in court.' * * *" 147
> Mont. 147, 148.

As stated in United States v. Wilson, 534 F.2d 375, 378, the juror's testimony regarding misconduct in that case could go to "'" * * * facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind."'"

In the present case the State presented only the affidavits of four jurors who admitted to having considered the two exhibits before the final vote. All admitted that at least one juror had not made up his mind before this last vote, and there is no way of knowing which of the jurors held out until the final

vote. Similarly, there is no way of knowing whether one of the jurors who had considered the exhibits was one whose decision was influenced by the exhibit. Moreover, improper conduct of one juror is chargeable to the whole panel. Goff v. Kinzel, 148 Mont. 61, 417 P.2d 105.

Even assuming proper use of the affidavits, it is clear the State did not demonstrate the lack of prejudice when it offered only the affidavits of four jurors that their consideration of extraneous evidence did not affect their verdict.

In Putro, 147 Mont. 147, 148, this Court commented on improper influences affecting one's right to a fair trial:

> "The guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial. * * * We cannot be too strict in guarding trials by juries from improper influences. The strictness is necessary to give due confidence to parties in the results of their causes, and to enlighten the public who have recourse to our courts that any improper influence which has the natural tendency to prejudice the verdict is grounds for a mistrial."

Defendant's right to fairness can only be guaranteed by a new trial. We reverse the order of the district court and remand the case for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 6 -